The personal property tax assessed against the complainant company by defendant for 1935 was taken before the Supreme Court on certiorari and was upheld by the judgment of that court in August, 1937. New Jersey Bell Telephone Co. v. *Page 582 Newark, 118 N.J. Law 490. From this judgment, the company appealed. In December, 1938, while the appeal remained unargued and the tax was still in litigation, the Director of Revenue and Finance of the city, after negotiations with the company, revised the tax and fixed an amount to be accepted by the city in full satisfaction. This amount the company promptly paid and thereupon the tax record was canceled. The action was taken by the director upon the supposed authority of our Tax Law, R.S. 5:4-97 and98. But in May, 1940, the City Commission, going on the theory that the director had proceeded without authority, instructed the director and the Board of Assessment and Revision of Taxes to correct the record so as to show $109,704 still due by the company on account of taxes for 1935. In January of the present year, a personal tax arrears warrant issued and a levy was made on property of complainant. Complainant prays that the city and its agents be enjoined from proceeding under the levy. The city moves to dismiss on the ground that the bill shows no cause of action.
The principal question argued is whether the power to adjust the tax, given by R.S. 54:4-97, resides in the Director of Revenue and Finance, or in the City Commission as a whole. This part of the statute has its source in Pamph. L. 1911 p. 61. The power is given to "the board having control of the finances" of the city. In order to determine what governmental authority is intended, we may look to related sections of our statutes, especially R.S. 54:4-54, 67, 94, 99, 109, 114 and 54:8-1. In most municipalities when the act of 1911 was passed, finances were controlled by a common council or other elected governing body; but in some cities, there was an appointed board of finance which levied taxes and managed the purse. R.S. 40:186-2, c.
Within the meaning of R.S. 54:4-97, the board having control of the finances is the body having responsibility for raising funds to carry on the municipal government; power to levy taxes. In Newark, in 1911 and until the adoption of the commission form of government, this board was the common council.
The Commission Form of Government Law ordains: "The board of commissioners established hereunder, shall have all *Page 583 
the executive, administrative, judicial and legislative powers and duties heretofore had and exercised by the mayor and city council, and all other executive or legislative bodies in such municipality, and shall have complete control over the affairs of such municipality." "The executive, administrative, judicial and legislative powers, authority and duties, in such municipality, shall be distributed into and among five departments," one of which is the Department of Revenue and Finance. R.S. 40:72-2
and 4.
Under this statute, while all the powers of the old common council are given to the board of commissioners, such powers, with certain exceptions, cannot be exercised by the board, but must be distributed among the five departments and vested in the directors of the departments severally. Thus the appointive power must be delegated. Sykes v. Heinzman, 100 N.J. Law 12. And the power to try on charges and remove an officer or employee.Post v. Anderson, 111 N.J. Law 303. But, as indicated, there are exceptions. The mandatory distribution of powers to the several departments is subject to other provisions of law which, in certain cases, either expressly or impliedly, reserve the power to the board acting as a body. One of the reserved powers is the enactment of ordinances and hence any action where an ordinance is necessary, must be taken by the commission as a whole. The commission also has authority to create and abolish subordinate boards and offices; to prescribe the powers and duties of each department and of all officers and employees and to make rules and regulations for the efficient and economical conduct of the business of the municipality. In aid of this duty, it may investigate officers and employees. Schmeidler v.Atlantic City, 102 N.J. Law 121; Simon v. O'Toole,108 N.J. Law 32, 42; affirmed, Id. 549; Wintermute v. Ellenstein,117 N.J. Law 274.
In general, the board of commissioners itself determines the frame of the municipal government by the creation of offices and defining the duties attached thereto; it prescribes rules for the conduct of business. And then it allocates the different branches of the machine, for actual operation among the five department directors. The board of commissioners *Page 584 
also retains direct authority in those matters which the legislature has deemed of such importance as to require action by ordinance. But except where an ordinance is necessary, executive or administrative action in each specific case devolves upon one or other of the five directors. Of course, there may be other exceptions which are not pertinent to the present case, or which have escaped my notice. The function of adjusting taxes underR.S. 54:4-97, is one of those which must be distributed and not be retained by the commission as a whole.
Before proceeding further, another line of argument bearing on the foregoing, must be considered. Granted that prior to the adoption of the Revised Statutes in 1937, the power to adjust taxes pursuant to the 1911 act could not be exercised by the commission itself, but only by one of the directors, yet the legislature was competent to change the law. The Revision of 1937 has been characterized as "wholly independent" legislation. DukePower Co. v. Board of Taxation, 125 N.J. Law 431. Did section54:4-97 override the law which theretofore governed and transfer the tax adjustment power to the City Commission itself, as the board having control of the finances? The Revision of 1937 stands as an independent enactment for the purpose of establishing the existence as statute law of all its sections. But those of its provisions which are taken without significant alteration from prior statutes are interpreted in accordance with the presumption against a legislative intention to effect, by a revision, a change of substance. Crater v. Somerset,123 N.J. Law 407. The presumption is re-enforced by section 1:1-4 of the revision itself. "The provisions of the Revised Statutes, not inconsistent with those of prior laws, shall be construed as a continuation of such laws." The Revision did not operate to shift the function of adjusting and settling taxes.
It does not appear that the Board of Commissioners of Newark has expressly put on the Department of Revenue and Finance the duty or power of tax adjustment under this section. Much research would be required to catalogue every power and duty to be found in our labyrinth of statutes relating *Page 585 
to municipalities. Doubtless many of them have not been expressly assigned to any department by the Board of Commissioners of Newark. And of course this situation is not peculiar to Newark. The board itself cannot exercise such powers and it cannot, I believe, nullify a particular power by failing to confer it on the director to whom it properly belongs. The power does not remain in abeyance but must be considered as assigned by implication. This view is supported by Sykes v. Heinzman andPost v. Anderson, supra, holding that power to appoint a city comptroller, or to try a policeman, belonged to the appropriate director despite attempted reservations of authority by the board. To the Department of Revenue and Finance of Newark prior to the adjustment of the tax which is the subject of this suit, had been distributed the authorities and duties of the comptroller, city treasurer, auditor, tax receiver, board of assessment and revision of taxes, board of assessment for local improvements, sinking fund commission, pension fund, and others. The power to adjust taxes is cognate to the powers expressly assigned and in my opinion was possessed by the director of the department at the time he settled complainant's taxes.
The city further argues that the complainant is concluded by judgment of the Court of Errors and Appeals. The appeal from the judgment in certiorari, which I have mentioned, and which was pending at the time the settlement was made, was not withdrawn by the complainant. A year later, it noticed the appeal for argument. Then, at the opening of the Court of Errors and Appeals in February, 1940, the company moved that the argument of the appeal be continued to the May term. The ground for the motion was that the Board of Commissioners of Newark had attempted to rescind the settlement of complainant's tax and that "opportunity should be afforded to test the legality of said acts of the Director of Revenue and Finance in the premises and that the rights, interest and status of the appellant should be preserved meanwhile." The motion to continue was denied; the appeal was argued and the judgment of the Supreme Court affirmed.124 N.J. Law 451. Since the judgment of the Supreme Court was rendered before the company and the Director of *Page 586 
Revenue and Finance compromised the tax, we may say with assurance that neither the judgment nor the affirmance thereof passed on the validity of the adjustment. The denial of the continuance was a discretionary, interlocutory ruling, and in no sense a judgment. Presumably the court found that a continuance was not necessary to the preservation of the "rights, interest and status of the appellant."
The authority of the director to adjust and settle taxes, exists when the validity of a tax is questioned and in litigation, and is not limited to cases where the tax is invalid. Therefore, the decision by our highest court, rendered after the adjustment was made, that the tax was valid, does not upset the settlement.
The motion to dismiss the bill is denied.